[Civ. No. 5003.   First Appellate District, Division One.—February 1, 1926.]

FREDERICK F. HEINE et al., Respondents, v. A. L. WRIGHT et al., Appellants.

[1] ATTACHMENT—RELEASE OF ATTACHED PROPERTY—CONSENT—DAMAGES.—An agreement by defendants, whose real property is attached, that if plaintiffs will release the attachment they will deposit money in bank upon which the attachment may be placed instead of upon the real property, does not amount to "a consent," under section 3515 of the Civil Code, on the part of defendants which precludes them from afterward claiming damages resulting from the attachment.

[2] ID.—DEFINITION OF "CONSENT."—The word "consent" means, in a legal sense, capable, deliberate, and voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mutual power and free action, unclouded by fraud, duress, or sometimes even mistake.

[3] ID. — UNDERTAKING — ACTION AGAINST SURETIES — CONTRACTS. — An attachment undertaking, which provides that in the event of a judgment in favor of the attachment defendant the obligors will become liable for damages caused by the attachment, constitutes an original, independent, and absolute contract on the part of the sureties.

[4] ID.—DAMAGES—LIABILITY OF SURETIES—ESTOPPEL.—In an action against the sureties on an undertaking for attachment, the contention of the sureties that they are relieved from the obligation of their undertaking because the attachment defendants agreed with the attaching plaintiffs that if the latter would release the attachment on real property they would deposit money in bank

---

3.   See 3 Cal. Jur. 449; 2 R. C. L. 886.
4.   See 3 Cal. Jur. 532; 2 R. C. L. 890.

which said plaintiffs might attach instead, amounts to an attempted impeachment of the attachment, the validity of which, in the absence of fraud, collusion, or mistake, the sureties are estopped to deny.

[5] ID.—CONTINUANCE OF ATTACHMENT PENDING APPEAL — APPEAL BOND—LIABILITY OF OBLIGORS.—In such a case, the status of the obligors on the appeal bond given to continue the attachment in force pending appeal is not affected by the conduct of the attachment defendants in agreeing to deposit money in bank upon which the attachment might be levied instead of upon the real property, since the lien created by the attachment of the bank deposit ended with the entry of judgment in the action in favor of the attachment defendants, and the liability of the obligors on such appeal bond arose from a transaction entered into by them after the entry of such judgment and involved an obligation entirely distinct from the one in regard to which the conduct of the attachment defendants has been called into question.

[6] ID.—RELEASE OF ATTACHMENT—SUBSTITUTED SECURITY—ESTOPPEL. The agreement of the attachment defendants that if plaintiffs would release the attachment on real property they would deposit money in bank which plaintiffs might attach instead did not estop the attachment defendants from enforcing their claim for damages resulting from the attachment against the sureties on the attachment undertaking, where it was not claimed that any fraud or deceit was practiced, nor that any misrepresentations were made by the attachment defendants in substituting the security for the attachment, and the evidence does not show that the attachment creditor was influenced or induced to accept said substituted security.

[7] ID.—MEASURE OF DAMAGES—ABSENCE OF FIXED RULE.—In an action against the sureties on an attachment undertaking, there is no fixed rule as to the amount of damages which might be recovered, it being proper to take into consideration all the circumstances attending the transaction, including the character and position of the parties, and which may carry the amount of damages beyond mere compensatory relief.

(1) 6 C. J., p. 511, n. 70.   (2) 12 C. J., p. 518, n. 52, 57, p. 519, n. 59.   (3) 6 C. J., p. 504, n. 64 New.   (4) 6 C. J., p. 512, n. 88 New, p. 539, n. 70.   (5) 4 C. J., p. 1299, n. 70 New; 6 C. J., p. 283, n. 78.   (6) 6 C. J., p. 501, n. 38.   (7) 6 C. J., p. 539, n. 71.

6.   See 10 Cal. Jur. 625.
7.   See 3 Cal. Jur. 555, 557.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. Franklin A. Griffin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gerald C. Halsey and Frederick T. Leo for Appellants.

Walter H. Linforth for Respondents.

KNIGHT, J.—These two actions were commenced by respondents, Frederick F. Heine and wife, to recover damages resulting from an attachment of a bank deposit belonging to them. The first action was brought against the sureties on the attachment undertaking; the second against the principal and sureties on the undertaking given on appeal to continue the attachment lien in force pending appeal. The causes were heard and determined by the trial court upon the same evidence. Judgment in each action was given in favor of Heine and wife. The defendants therein have appealed, and present their appeals in one record.

The facts are that in 1917 the Anglo-American Land Company, a corporation, brought an action in the county of Sonoma against Heine and wife, in which certain real property belonging to the latter, in San Francisco, was attached. That action was based upon an alleged indebtedness of $6,000 claimed to be due as a deficiency after sale of real property under a deed of trust given to secure a promissory note. The sureties on the attachment undertaking were C. W. Wright and John P. Rock. After the attachment had been levied an opportunity was afforded Heine and wife to exchange said property for other real property, but they were unable to consummate the exchange because of the existence of said attachment. Thereupon one Hooper, acting for Heine and wife in the matter of the proposed exchange of properties, conferred with the land company's attorney for the purpose of having said attachment released. Said attorney first demanded the execution of the usual bond on release of attachment, but Heine and wife declined to furnish such a bond upon the ground that it would require them to deposit a sum of money as collateral with the bonding company, upon which they would lose interest dur-

ing the period of the deposit. Hooper then suggested that Heine and wife would be willing to deposit the sum of $7,000, at interest, in a savings bank until the action was determined. In response to this proposition said attorney stated, according to his testimony: "I told Mr. Hooper that that would be satisfactory to myself and my clients, and Mr. Hooper then said that he would have Mr. Heine at once deposit for himself and wife the sum of $7,000 in the savings department of that bank at Santa Rosa, and that they would arrange with the bank to notify me in writing just as soon as that money was on deposit there, so we could proceed to make arrangements to attach it, and that as soon as the attachment was placed on the money that I would deliver the release of the real property . . . " Said money was deposited accordingly, but the clerk of the court in which the attachment was obtained refused to issue a new writ unless a new affidavit and undertaking were given; whereupon said land company filed a new affidavit and another undertaking, with appellants A. L. and G. A. M. Wright as sureties thereon, and caused to be issued a second writ of attachment, by virtue of which said bank deposit was levied upon; thereafter the attachment on said real property was released and the exchange of said property was consummated. Upon trial of the action against Heine and wife judgment was rendered in their favor. Said land company appealed, and gave a bond with Annie L. and C. W. Wright as sureties thereon, for the purpose of continuing said second attachment in force pending appeal. On appeal the judgment in favor of Heine and wife was affirmed (*Anglo-American Land Co.* v. *Heine,* 52 Cal. App. 472 [198 Pac. 1009]), the court holding that the evidence was sufficient to support the finding of the trial court that the indebtedness sued upon by said land company had been, as claimed by Heine and wife, fully paid and discharged. Thereupon Heine and wife brought these two suits for damages, one against A. L. and G. A. M. Wright as sureties on the second attachment bond, and recovered a judgment therein for the sum of $239.20, which represented the accrued interest on said sum of $7,000 at the legal rate, from the date of the levy of said attachment thereon until the entry of judgment, less the amount of interest paid Heine and wife by the bank on said deposit for the same period of time at the rate of four per

cent. The other was commenced against the Anglo-American Land Company, as principal, and Annie L. and C. W. Wright, as sureties on the appeal bond, which was given to continue said second attachment in force pending appeal, and a judgment therein was given in favor of Heine and wife for the sum of $485.60 and costs, which represented the accrued interest on said bank deposit, at legal rate, from the date of the entry of judgment in the trial court to the date of the affirmance on appeal, less the amount of interest paid on said deposit by the bank.

[1] In the second affirmative defense pleaded in the answer in each action it was alleged that respondents consented to the attachment of said bank deposit. The trial court negatived those allegations by a general finding, but further found in regard thereto that in order to enable respondents to consummate the exchange of the attached real property, they deposited $7,000 in a bank in Santa Rosa and requested that the attachment be placed upon said bank deposit "instead of upon said real property."

Regarding the appeal prosecuted by the sureties on the attachment bond, the main contention urged for reversal of the judgment is that the conduct of respondents in depositing said money under the circumstances above related amounted to a consent on their part to the attachment being made, which consent precluded them from afterward claiming damage resulting from said attachment. This contention is based primarily upon the maxim of jurisprudence that "he who consents to an act is not wronged by it" (Civ. Code, sec. 3515).

Even though it be assumed that consent by a defendant to an attachment being made upon his property does operate as a bar to the subsequent enforcement of the obligation arising from the attachment undertaking, the evidence in the instant case fails to show the exercise of such freedom of action on the part of respondents in regard to said attachment as would bring their conduct within the purview of the maxim of jurisprudence relied upon by appellant. [2] The word "consent" means in a legal sense "capable, deliberate, and voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mutual power and free action" (Webster's Dictionary); or as stated in the case of *Butler* v. *Collins*, 12 Cal. 457, which was

an action for damages for the tortious taking of personal property, wherein it was claimed that the owner consented to the taking: "Consent, in law, is more than a mere formal act of the mind. It is an act unclouded by fraud, duress, or sometimes even mistake." The evidence here shows without dispute that the Anglo-American Land Company was insisting at all times upon maintaining an attachment lien on respondents' property to secure the payment of the alleged debt upon which it was suing, and refused to release the attachment on said real property until satisfactory substitution of security was effected; on the other hand, respondents from the beginning claimed that the suit upon which the attachment proceeding was based was groundless; and it was never intimated by them that they would waive or refrain from pursuing the remedy afforded by law for the recovery of such damages as might accrue from a wrongful or malicious attachment. The placing of said money on deposit in the bank under those circumstances cannot be said to be the result of the exercise of a free and voluntary act on the part of respondents such as would deprive them of their right to afterwards complain of the attachment, but was in effect a situation brought about by a coercive attitude manifested on the part of said land company in view of the pending exchange of said real property, whereby it refused to release the attachment on said real property until ample security was given in its place; in other words, the placing of said money in the bank was, in substance, a compliance with the demand of said land company for substituted security for an attachment already levied, acceded to by respondents only for the purpose of obtaining the release of said real estate, and thus obviate further and greater damages from being caused by the breaking up of the contemplated exchange of said property; and having deposited the money under those conditions, we believe the trial court was correct in holding that respondents were not precluded from seeking recovery against the sureties on the attachment undertaking.

[3] Furthermore, said land company, with whom these transactions regarding the bank deposit were had, is not a party to this particular action. The controversy here lies between the attachment defendants and the obligors on the attachment undertaking, the action being based solely

upon said attachment undertaking. In such an action the undertaking, to all intents and purposes, constitutes an original, independent, and absolute contract on the part of sureties. (*Frankel* v. *Stern,* 44 Cal. 168; *Pieper* v. *Peers,* 98 Cal. 42 [32 Pac. 700].) **[4]** It is not claimed by the appellants on this particular appeal that respondents induced them to become sureties on said undertaking, or made any request whatever of them in regard to the attachment of said bank deposit, or the release of the attachment on the real property; in fact, neither respondents nor their agent Hooper ever had any dealings with them, they having come into the case for the first time when they became sureties on the attachment undertaking. The undertaking sued upon was entered into by them voluntarily, in consideration of the issuance of said writ of attachment and for the purpose of having the respondents' property seized. The purpose sought was accomplished to the damage of respondents. Said undertaking provided without qualification that in the event of respondents recovering a judgment in the action appellants would become liable for damages caused thereby. Under those circumstances, and in the absence of any charges of fraud, collusion, or mistake, we are of the opinion that the contention urged by the appellants in regard to the matter of consent amounts to an attempted impeachment of the attachment, the validity of which they are, as such sureties, estopped to deny. (*Tormey* v. *McIntosh,* 43 Cal. App. 411 [184 Pac. 1012]; 2 Ruling Case Law, p. 890, citing cases; *McLean* v. *Wright,* 137 Ala. 644 [97 Am. St. Rep. 67, 35 South. 45]; *Brown* v. *Tidrick,* 14 S. D. 249, 86 Am. St. Rep. 754, 85 N. W. 185].)

In reference to the appeal from the judgment given in the matter of the appeal bond, the land company, in addition to making the contention regarding respondents' consent, claims that by releasing the attachment on the real estate and making the levy on the bank deposit, it was "led to change its position for the worse," and that therefore respondents are estopped from demanding or receiving any damages from these particular appellants, under the appeal bond, resulting from the attachment of said money. This claim is based upon the theory that if the attachment on the real estate had continued to remain in force instead of being superseded by the attachment of the money, these

appellants, as parties to the appeal bond, would not have been liable for the payment of damages, because, at most, only nominal damages are recoverable in an action brought upon an attachment undertaking where real property is attached. (*Heath* v. *Lent,* 1 Cal. 410; *Elder* v. *Kutner,* 97 Cal. 490 [32 Pac. 563].)

[5] We believe that the matter of respondents' conduct in relation to the attachment of the bank deposit, whatever it may have been, can have no effect upon the status of the obligors of the appeal bond, for the reason that the lien created by the attachment of the bank deposit, which it is contended was consented to by respondents, ended with the entry of judgment in the action in favor of respondents, and the liability of the obligors on the appeal bond arose from a transaction entered into by them after the entry of that judgment, and involves an obligation entirely distinct from the one in regard to which the conduct of respondents has been called into question. The conduct of respondents, therefore, in reference to the attachment of the bank deposit cannot be held to extend beyond. the period of the lien created by that attachment nor to operate to the advantage of these appellants.

[6] Moreover, the doctrine of estoppel cannot be held to apply against the respondents, because none of the essential elements of that doctrine has been established. It is not claimed that any fraud or deceit was practiced, nor that any misrepresentations were made by respondents in substituting the security for the attachment; nor that any "intentional or deliberate act" on their part led said land company "to believe a particular thing was true and to act upon such belief" (Code Civ. Proc., sec. 1962; 10 Cal. Jur., p. 625); nor does the evidence show that said land company was influenced or induced to accept said substituted security. It acted in the matter of its own accord and in order to obtain a more efficacious lien to secure the debt sued upon; and having concluded the transaction through its attorney, must be presumed to have known of the legal consequences which might follow therefrom. [7] But even though it could be fairly inferred from the evidence that the substitution of security was effectuated through the inducement of respondents, it cannot be said with any degree of certainty that the land company's position was made worse thereby, for the

reason that if the attachment on the real property had continued in force, respondents, upon rendition of judgment in that action in their favor, would not have been restricted to nominal damages obtainable in an action against the sureties on the attachment undertaking, but would have been allowed, under the law, to proceed against the land company alone for malicious attachment (*Vesper* v. *Crane Co.*, 165 Cal. 36 [L. R. A. 1915A, 541, 130 Pac. 876]); and in such an action there is no fixed rule as to the amount of damages which might be recovered, it being proper to take into consideration all the circumstances attending the transaction, including the character and position of the parties, and which may carry the amount of damages beyond mere compensatory relief. (*Kinsey* v. *Wallace*, 36 Cal. 462; *Weaver* v. *Page*, 6 Cal. 681; 6 Cor. Jur. 539.)

The case of *Baines* v. *Ullmann, Lewis & Co.*, 71 Tex. 529 [9 S. W. 543], cited by appellants, is not in point as to either appeal. The controversy there concerned a second attachment, and it was proved that the first attachment, which was defective, was made with the consent of the attachment defendant. The court therefore held, merely, in reference to the question of consent, that the attachment defendant, having consented to his goods being attached, "it ought to be understood that he consented an attachment should be made that would hold the goods, and if the first was informal, that the informality might be cured by the second."

It is our opinion that the judgment in each action should be affirmed and it is so ordered.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1926.