[Civ. No. 25266. Second Dist., Div. Two. Jan. 24, 1962.]

ELBA C. BOWLES, Plaintiff and Appellant, v. PACIFIC COMMISSARY COMPANY et al., Defendants and Respondents.

Elwood Bowles and Ralph J. McGookin for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

ASHBURN, J.—This appeal is submitted under rule 17(b), no respondents' brief having been filed.[1] It is an appeal from an order vacating and discharging a writ of attachment.

On May 26, 1960, plaintiff filed a complaint upon a promissory note for $6,500 executed by defendants on April 4, 1960. The note is silent as to any security given to secure payment. Plaintiff's attachment affidavit recites that the obligation "has not been secured by any mortgage, deed of trust, or lien upon real estate or personal property, or any pledge of personal property." A writ of attachment issued and on May 27, 1960, the sheriff, through his keepers, took possession of defendants' place of business and there remained, 24 hours per day, until June 18, 1960, when the sheriff had collected from the receipts of the business the sum of $7,853.14.

Defendants had answered the complaint on June 16 alleging

---

[1] The court has been advised that respondent, Pacific Commissary Company has been adjudicated a bankrupt since the order was made in this proceeding.

The trustee (or receiver) in bankruptcy may, but need not, intervene or be substituted in any pending litigation concerning the bankrupt. (11 U.S.C.A. § 29 (Bankruptcy); *Smith* v. *Hayes* (Ohio) 133 N.E.2d 443.)

*Shivell* v. *Hurd*, 115 Cal.App.2d 405, 406 [252 P.2d 62]: "While it is true that all rights of action in favor of the bankrupt on contract vest in the trustee by virtue of the bankruptcy act, it is well settled that a trustee is not obligated to intervene in pending actions by or against the bankrupt. He may allow them to proceed without intervention and accept the fruits if successful. [Citations.]"

*Id.* at p. 407, quoting from a Georgia case: " 'Under the act . . . the trustee may intervene, but is not bound to do so; but on his failure to have himself substituted as plaintiff the suit does not abate. It may still be prosecuted by the bankrupt. [Citations.]' "

And at p. 408: "It did not lie in the mouths of the respondents to insist that the trustee intervene or be substituted therein without his consent."

The bankruptcy court may, under proper circumstances, issue a restraining order and stay proceedings. Also an application may be made in the state court to stay proceedings. If no stay is granted, the court may proceed. (*Allard* v. *Estes*, 292 Mass. 187 [197 N.E. 884].)

There appears to have been no stay and no substitution of parties or attorneys in the instant case. (See Rules on Appeal, rule 48.)

as a separate defense that the note was secured by a chattel mortgage and by a pledge of stock of defendant corporation.

On June 23, 1960, defendants filed their notice of motion to discharge and set aside the writ of attachment and for the return of funds held under said writ, upon the grounds that the note was secured by a chattel mortgage, a copy of which was attached to defendants' affidavit; that the note was further secured by a contemporaneous written agreement pledging the stock of the corporation; and that plaintiff knowingly filed a false affidavit.

In opposition to the motion, plaintiff filed the affidavit of her attorney alleging that the form attached thereto was executed by Harry M. Selcer, President of Pacific Commissary Company, one of the defendants, and that it constitutes a release of attachment by payment to the levying officer. This document reads:

"OFFICE OF THE SHERIFF
COUNTY OF LOS ANGELES
STATE OF CALIFORNIA

Case No. 746478 Los Angeles, Calif. 6-18, 1960

I herewith hand to Peter J. Pitchess, Sheriff of Los Angeles County, the sum of $7840.75 in full settlement in the above entitled action, and authorize the said Sheriff to pay said sum, less Sheriff's fees, to the Plaintiff or Elwood Bowles, Ralph J. McGookin, Attorney, for the reason that I owe said claim and do not intend to defend against it.

PACIFIC COMMISSARY Co.
HARVEY M. SELCER-Pres.

NOTICE: If you want to contest this case and want to bond against this proposed attachment instead of paying the claim, you must deliver to the deputy a larger sum of money than the above claim and costs."

On August 1, 1960, the trial court by minute order granted defendants' motion to vacate and discharge the writ of attachment. The prayer for an order directing the sheriff to return funds obtained and previously held by him pursuant to the writ was denied. Plaintiff appeals only from the portion of the order discharging the writ; she does not appeal from the latter part of the order.

Appellant contends (1) that the court erred in discharging the writ for the reason that it had already been terminated by satisfaction of the principal obligation, and (2) that this

authorization of June 18 to the sheriff constituted a release or waiver of any rights which defendants might have had to object to the attachment.

In response to the affidavit of plaintiff's attorney, defendants filed affidavits of defendant Selcer, of defendants' attorney, and of the defendants' restaurant manager, from which it appears that on June 17, 1960, one of the sheriff's custodians advised Selcer that enough funds had been collected to cover the demand, the sheriff's costs, the attorney's fees demanded, and interest, and he was requested to sign the authorization form. Plaintiff's attorney admitted at the argument of the motion that he had prepared this "release."

Selcer advised the custodian, after consulting his attorney, that he would not sign the document "if there was any other way in which the Sheriff would leave the premises without collecting additional funds." Thereupon the custodian told him "that there was no alternative, that additional funds in the total sum of approximately $2,300.00, more or less, would have to be collected by him and his office unless said authorization form was signed." The custodian stated the reason for the collection of additional money was that it was necessary that "the obligation be bonded." Selcer told the custodian "that he had no practical alternative but to sign the authorization under these circumstances, since the collection by the sheriff of the additional sum . . . would result in the closing of the business . . . since the obligations to most of the major purveyors of the said defendant and the payroll of said defendant were, on that date, delinquent either in whole or in part."

The above averments are uncontradicted. Selcer's affidavit concludes with the allegation that due to all of the circumstances recited, he signed the authorization under force and duress.

Section 538 of the Code of Civil Procedure requires, as a prerequisite to the issuance of a writ of attachment, an affidavit by or on behalf of the plaintiff showing "[t]he facts specified in Section 537 which entitle him to the writ." The latter section provides that the writ may issue: "1. In an action upon a contract, express or implied, for the direct payment of money, where the contract is made or is payable in this State, and is not secured by any mortgage, deed of trust or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given become valueless; . . ."

Section 556 Code of Civil Procedure, says that the defendant may "at any time, either before or after the release of the attached property, or before any attachment shall have been actually levied, apply, on motion, upon reasonable notice to the plaintiff, to the court in which the action is brought, or to a judge thereof, that the writ of attachment be discharged on the ground that the same was improperly or irregularly issued." Section 558: "If upon such application, it satisfactorily appears that the writ of attachment was improperly or irregularly issued it must be discharged; *provided* that such attachment shall not be discharged if at or before the hearing of such application, the writ of attachment, or the affidavit, or undertaking upon which such attachment was based shall be amended and made to conform to the provisions of this chapter."

The record does not contain the complaint or the attachment affidavit. However, plaintiff does not deny, as alleged by defendants, that plaintiff "has filed a knowingly false declaration with this Court, being denominated an affidavit for attachment against resident, in which it is falsely stated that payment of the obligation sued on herein has not been secured by any mortgage, deed of trust, or lien upon real estate or personal property, or any pledge of personal property." Defendant made a showing that said note was secured by a chattel mortgage covering its furniture, fixtures and equipment per an inventory attached, dated April 4, 1960, the date of said promissory note. This mortgage shows that said property is subject to a prior chattel mortgage for $20,000.

"In order to sustain the attachment it was incumbent upon plaintiffs to establish either of two facts: (a) That the debt had not been secured originally; or (b) That if secured in the beginning, the security later became valueless." (*Giandeini* v. *Ramirez*, 11 Cal.App.2d 469, 471 [54 P.2d 91].)

No showing was made that the debt was not originally secured by a chattel mortgage. Plaintiff's counsel, in a letter addressed to the court under date of July 11, 1960, concedes that the promissory note was so secured, but attempts to come within section 537 by stating that this chattel mortgage "was second to a first mortgage for $20,000" and that "at the present time those fixtures are only worth approximately $5,000." The letter states further that "plaintiff's complaint and Affidavit for Attachment could have been amended to recite that there was security but that it had become valueless."

Aside from the fact that plaintiff made no request or

attempt to amend his affidavit "at or before the hearing" (§ 558), this showing was entirely insufficient. The only reference to the value of the security was the unsworn statement of plaintiff's counsel. Furthermore, it must be shown that the security, after it was given, has become valueless, and "without any act of the plaintiff." (§ 537.) (See *Giandeini* v. *Ramirez, supra,* 11 Cal.App.2d 469, 472-475; *Fisk* v. *French,* 114 Cal. 400, 403 [46 P. 161]; *Anaheim Nat. Bank* v. *Kraemer,* 120 Cal.App. 63, 65-66 [7 P.2d 765]; *Yosemite etc. Assn.* v. *Case-Swayne Co.,* 73 Cal.App.2d 806, 814 [167 P.2d 541]; 5 Cal.Jur.2d § 29, pp. 635-636; § 55, p. 670.)

▮▮ Under section 537, Code of Civil Procedure, plaintiff, having security for the obligation under the note, which security was not shown to have become valueless after it was given, had no right to maintain the present action and no right to the attachment. (*Scrivener* v. *Dietz,* 68 Cal. 1, 3 [8 P. 609]; *Gessner* v. *Palmateer,* 89 Cal. 89, 94 [24 P. 608, 26 P. 789, 13 L.R.A. 187]; *Fisk* v. *French, supra,* 114 Cal. 400, 403; *Kreider* v. *California Thorn Cordage, Inc.,* 128 Cal.App. 262, 264 [16 P.2d 1002]; *Giandeini* v. *Ramirez, supra,* 11 Cal. App.2d 469, 475; *Yosemite etc. Assn.* v. *Case-Swayne Co., supra,* 73 Cal.App.2d 806, 813-814; *Lencioni* v. *Dan,* 128 Cal. App.2d 105, 111 [275 P.2d 101]; 5 Cal.Jur.2d § 26, p. 629.)

▮▮ There is no merit to the contentions that "[t]he document signed by Respondents on June 18, 1960, constitutes a voluntary payment by Respondents in full satisfaction of the obligation," and that this document "constituted a release or waiver of any rights which Respondents might have had to object to the Attachment." The uncontradicted facts show that this money was not paid willingly, but under duress —and pursuant to a writ of attachment issued upon a false affidavit. There is no contention or intimation on the part of plaintiff that the false affidavit was the result of inadvertence or oversight; the trial court determined "that both plaintiff and her attorney knew when it was signed and filed that the note sued on was in fact secured by the chattel mortgage and the pledge which had been executed concurrently." Payment of the money to the sheriff, in the circumstances of this case, "cannot be said to be the result of the exercise of a free and voluntary act on the part of respondents" (*Heine* v. *Wright,* 76 Cal.App. 338, 343 [244 P. 955]; see also *Schneider* v. *Zoeller,* 175 Cal.App.2d 354, 362-363 [346 P.2d 515]), nor did it constitute a waiver of defendants' right to object to the attachment. ▮▮ "[W]aiver is the *intentional*

relinquishment of a known right." (*Henderson* v. *Drake*, 42 Cal.2d 1, 5 [264 P.2d 921].) Defendants' counsel states in his affidavit that he told plaintiff's attorney "on June 17, 1960, that said EXHIBIT 'A' was being signed under force and duress and that it would continue to be the intention of both defendants herein actively to dispute and contest the legality of the issuance of the writ of attachment, . . ."

 Nor did the "authorization" of June 18 constitute a discharge of the writ. When the funds were released to the sheriff on June 18, apparently the custodians left the property and no further levy was made. His later payment to plaintiff of the full amount of her claim undoubtedly worked a release of the seized property from the attachment. Section 3057, Civil Code, says: "An officer who levies an attachment or execution upon personal property acquires a special lien, dependent on possession, upon such property, which authorizes him to hold it until the process is discharged or satisfied, or a judicial sale of the property is had." The statute recognizes the propriety of a formal dissolution or discharge of an attachment writ which has been improperly issued, for sections 556-558, Code of Civil Procedure, provide that such a motion may be made and granted "at any time, either before or after the release of the attached property." Thus the record is cleared and the way made straight for the wronged defendant who would pursue the remedy on the attachment bond or would sue for wrongful attachment.

Appellant makes the further contention that this case was effectively dismissed prior to the making of the within order, thus the trial court lost all power and jurisdiction to make further orders, and the order purporting to vacate and discharge the writ of attachment was a nullity.

By way of augmentation of the record appellant has filed a supplemental clerk's transcript which contains a stipulation of counsel, dated March 10, 1961, to the effect that on June 30, 1960 (the return day of the motion to discharge and dissolve attachment) "Ralph J. McGookin, one of the attorneys representing plaintiff in this action, had Dismissals as to all defendants which said attorney attempted to file with the Clerk of Department 63; that Judge McCoy, at that time, ordered said attorney not to file said Dismissals." We have no other explanation of the matter in any portion of the record.

 It is incumbent upon an appellant to present a record which affirmatively shows that reversible error has been committed. "For an appeal to engage the consideration of an

appellate court, it must be brought up on a record which, in addition to being otherwise formally sufficient, shows the error calling for correction. Such error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him. This basic rule is a corollary of the equally fundamental principle that all presumptions and intendments are in favor of the regularity of the action of the lower court." (3 Cal.Jur.2d § 260, p. 781.) In the present circumstances we may assume that the defendants' answer contained a counterclaim or otherwise sought affirmative relief and therefore could not be dismissed without defendants' consent (Code Civ. Proc., § 581), and that consent was not forthcoming. So we cannot know from this record nor can we declare that the judge erred in refusing to recognize the proffered dismissals.

Moreover, error, if committed, cannot be held prejudicial, for the defendants were seeking a dissolution of the attachment and the dismissal of the action would have had just that effect. ■■■ "The general rule is that an attachment terminates with the main suit to which it is necessarily incidental." (4 Am. Jur. § 623, p. 926.) ■■■ Specifically, *"Dismissal* of the original action in which an attachment was levied operates to release the attachment lien. . . ." (7 C.J.S. § 268, p. 444.) See also *O'Connor* v. *Blake,* 29 Cal. 312, 315-316.

There is no substance to this appeal.

Order affirmed.

Fox, P. J., and Herndon, J., concurred.