[Civ. No. 27228.   Second Dist., Div. Two.   July 25, 1963.]

GEORGETTE BYARD et al., Plaintiffs and Respondents, v. NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Defendant and Appellant.

Anderson, McPharlin & Conners and Robert E. Jones for Defendant and Appellant.

Cleveland & Erpelding and John W. Erpelding for Plaintiffs and Respondents.

HERNDON, J.—National Automobile and Casualty Insurance Company appeals from the judgment entered against it following a nonjury trial of an action brought by respondents upon an undertaking on attachment filed pursuant to section 539 of the Code of Civil Procedure.

In the prior action in which appellant's undertaking was filed, respondents' real property was attached and their motion to quash the attachment was denied. Thereafter a trial on the merits was concluded by a judgment in respondents' favor. They were awarded their costs, which were paid. Subsequently they filed the instant action against appellant on its undertaking on attachment.

In seeking a reversal of the judgment, appellant makes the following assignment of error: "The trial court erred in awarding, as damages, a sum incurred by [respondents] for attorneys' fees in the defense of the action in which [appellant's] undertaking on attachment was filed."

This contention was definitely rejected by our Supreme Court in *Reachi* v. *National Auto. & Cas. Co.*, 37

Cal.2d 808, 811-813 [236 P.2d 151]. It was decided therein that California would adopt the prevailing rule, namely, that attorney's fees incurred in the defense of the original action on its merits are recoverable upon a showing that relief from the attachment could not have been obtained by motion or other summary proceeding, and that it was necessary to defend on the merits of the main action in order to defeat the attachment.

Appellant seeks to avoid the application of the rule adopted in the *Reachi* decision by pointing out that there the defendant in the original action was a *nonresident*, so that the attachment which formed the basis of the subsequent action was used to obtain "quasi in rem" jurisdiction over the defendant in accordance with section 537, subdivision 3, of the Code of Civil Procedure. (*Reachi* v. *National Auto. & Cas. Co.*, *supra*, p. 810.) From this, appellant argues that, notwithstanding the absence from the opinion of any suggestion that such fact was of any significance to its determination, nevertheless the ruling therein made should be limited only to such factual situations and should not be extended to cases where, in addition to the attachment, in personam jurisdiction is obtained over the defendant in the original action by personal service within the state.

The reasoning by which appellant seeks to distinguish *Reachi* and to avoid its rule is not persuasive. It urges that even if the result reached in *Reachi* was correct, a proposition on which appellant appears to entertain the gravest doubts, it could only be because the nonresident defendant therein would not have been required to defend the original action at all were it not for the effect of the substituted service accompanying the attachment. Therefore, it argues, the attorney's fees resulting from such defense might possibly be considered as included within the broad language of section 539, which provides that the sureties on the undertaking on attachment shall insure "that if the defendant recovers judgment, the plaintiff will pay all costs that may be awarded to the defendant and *all damages which he may sustain by reason of the attachment*, not exceeding the sum specified in the undertaking. . . ." (Italics added.)

However, appellant continues, where the defendant has been personally served, he is required to defend in any event, and the fact that his property remains bound by the attachment until such time as the lack of merit in plaintiff's

action becomes established is wholly inconsequential and immaterial.

We cannot dismiss so lightly the consequences which necessarily result from a plaintiff's ex parte decision to subject a defendant's property and credit reputation to a long-term cloud in support of a claim which ultimately is proven to be unmeritorious. Appellant, of course, is unable to suggest any method by which a resident (as distinguished from a nonresident) defendant may free his property from an attachment that is valid and regular on its face except by defending the action upon its merits. If he fails to do so, the resident loses his property as surely as the nonresident, and, pending a determination on the merits, his property is equally burdened.

In point of fact, if there are any equities to be considered in the two situations, the more favorable in most instances would appear to lie with the party attaching the property of the *nonresident,* since this may be the only available means by which to achieve a judicial determination of the asserted claim. In the instance of the *resident* defendant, no such considerations are present. Therefore, when the party asserting the claim deliberately determines to impose hardships upon another prior to any judicial resolution of a question on which he has any doubt, he reasonably may be said to have volunteered to assume the risks involved, including the costs which the other necessarily will incur, in the event that his judgment ultimately is proven to have been faulty.

Appellant, however, argues further that, in the instant case respondents testified that they would have defended upon the merits in any event, and hence to award them attorney's fees for such defense would be inconsistent with their own admissions. That is to say, it would be equivalent to a ruling that absent the attachment they would have defaulted in the action. But appellant is in no favorable position to urge speculation upon what respondents might in fact have done if it had not chosen to attach their residences. It is unreasonable for a party who actually has availed himself of the attachment process to insist that the trial court in each case must attempt to postulate what expenses the defendant might have incurred in the hypothetical situation which by his own actions he has prevented from attaining reality.

Lastly, appellant asserts that to apply the rule of the *Reachi* case in this instance will "severely penalize a plaintiff who in good faith believes that he has a valid, provable cause

of action but nonetheless loses his lawsuit.'' Manifestly such is not the case. Appellant is not being penalized for bringing an action which it cannot establish. As noted in 5 California Jurisprudence 2d, Attachment and Garnishment, section 3, page 597 :

''In many of the states the process of attachment was originally adopted as a means of compelling the appearance of nonresident and other debtors, upon whom the ordinary process of the courts could not be served. Upon the appearance and posting of bail in the manner required by the practice then in force with respect to other process, the attachment was dissolved. In many instances the remedy was extended to cases where debtors were fraudulently concealing, removing, or otherwise disposing of the property with an intent to defraud their creditors. In California, the remedy is extended over a wider field, and seems to proceed upon a theory different from the attachment laws of any other state. The design of our law seems to be not merely to reach nonresident and absconding debtors, or to circumvent fraud, but to afford the creditor security for every demand not otherwise secured, arising upon a contract for the direct payment of money made in the state, in which there may be default of payment. Subsequent to the date of the case thus stating the purposes of attachment, the remedy has been further extended by various amendments to the statute defining the cases in which the writ may issue, so that it is now available in actions to recover damages for injury to property arising as a consequence of negligence, fraud, or other wrongful act in the case of nonresident defendants, or those departing from the state and those concealing themselves therein so as to elude discovery after diligent search; in actions for unlawful detainer, and for the collection of taxes or moneys due on any obligation or penalty imposed by law.''

The ultimate resolution of all actions, including the purest contract right calling for the payment of a sum certain, is an unknown factor prior to final judicial determination. Therefore it appears entirely reasonable to require one who contemplates availing himself of this ''predetermination'' right to weigh carefully the probabilities, the risks, the advantages and disadvantages thereof. It must be assumed that he is fully informed as to the merits of his cause and his ability to establish it, and, if he entertains serious doubts on either point, he need only restrict himself to the position of the usual plaintiff who must await trial on the merits before seiz-

ing upon the assets of the defendant. Certainly this appears preferable to an arbitrary refusal fairly to compensate an alleged debtor for the monies he has expended in freeing his property of the encumbrance placed upon it by invoking the only procedure available to him.

Appellant also acknowledges that, if we were to accept his arguments, this court would have to deviate from the holdings in several cases in which the rule of the *Reachi* case has been applied in instances where in personam jurisdiction was not lacking, although this point does not appear to have been specifically passed upon therein. (See *Clark* v. *Andrews,* 109 Cal.App.2d 193, 195 [240 P.2d 330]; *Barlin* v. *Barlin,* 156 Cal.App.2d 143, 147 [319 P.2d 87]; *Schneider* v. *Zoeller,* 175 Cal.App.2d 354, 363 [346 P.2d 515].)

Since the Supreme Court denied hearings in *Clark* v. *Andrews, supra,* and in *Schneider* v. *Zoeller, supra,* we do not feel that it is within the province of this court to adopt appellant's suggestion that we now refuse to apply the rules enunciated in *Reachi.*

Although denial of a hearing is not the equivalent of express approval by the Supreme Court, it has been said that "The order of [the Supreme Court] denying a petition for a transfer . . . after . . . decision of the district court of appeal may be taken as an approval of the conclusion there reached, but not necessarily of all of the reasoning contained in that opinion." (*Eisenberg* v. *Superior Court,* 193 Cal. 575, 578 [226 P. 617]; see also *Cole* v. *Rush,* 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137].) Any deviation from the apparently general holding of the *Reachi* decision and the other decisions above cited applying the rule therein set forth, must come from the Supreme Court itself.

The judgment is affirmed.

Fox, P. J., and Smith, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1963.

---

*Assigned by Chairman of Judicial Council.