[Civ. No. 27676. Second Dist., Div. Two. Dec. 10, 1963.]

ARCTURUS MANUFACTURING CORPORATION, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ELWOOD C. RORK et al., Real Parties in Interest.

Guy Richards Crump and Hill, Farrer & Burrill for Petitioner.

No appearance for Respondent.

Eugene M. Elson for Real Parties in Interest.

HERNDON, J.—Petitioner herein seeks a writ of prohibition to restrain respondent court from enforcing its order which (a) releases from petitioner's attachment certain personal property of Elwood and Jacquelyn Rork, the real parties in interest herein, and (b) provides that petitioner "may not subsequent to July 22, 1963, pursue the remedy of attachment against the personal property of said defendants Elwood C. Rork and Jacquelyn Rork heretofore attached on July 22, 1960, and on July 22, 1963, as above mentioned."

On July 22, 1960, petitioner filed an action seeking recovery of an alleged indebtedness of $120,000. With the filing of the complaint, petitioner also sought and obtained the issuance of a writ of attachment in like amount.[1] The sheriff, in execution of said writ, levied upon an indebtedness of $12,754.92 owed to the Rorks by the Precision Forge Company, and $5,051.03 owed to them by the Security-First National Bank of Los Angeles.[2]

On July 22, 1963, the action not yet having been brought to trial, petitioner obtained the issuance of an alias writ of attachment pursuant to section 559½ of the Code of Civil Procedure and caused a levy thereunder to be made upon the identical property above described.

The Rorks thereafter sought an order releasing this property on the ground that the three-year limitation period prescribed by section 542b of said code could not be extended in this fashion. They also sought an order prohibiting petitioner from pursuing further the remedy of attachment against the property thus released. By an order signed on August 20, 1963, the court ordered the garnishees to release the properties held by them by virtue of the original writ of attachment of July 22, 1960, and the alias writ of attachment of July 22, 1963. This order also provided that the petitioner "may not subsequent to July 22, 1963, pursue the remedy of attachment against the personal property of said [Rorks] heretofore attached on July 22, 1960, and on July 22, 1963, as above mentioned." We hold that this ruling was correct.

"Attachment liens are solely creatures of statute. They can be created and can continue to exist only in the

---

[1] For a detailed statement of the facts herein see *Arcturus Mfg. Corp.* v. *Rork*, 198 Cal.App.2d 208 [17 Cal.Rptr. 758], wherein the Rorks appealed from the order denying their motion to dissolve the attachment.

[2] Certain real property and safe deposit boxes were attached also, but these items are not involved herein.

cases and to the extent to which the legislature by statutory enactment has authorized their creation and continued existence." (*Brun* v. *Evans*, 197 Cal. 439, 443 [241 P. 86].) ██ "It has been said that attachment is a harsh remedy at best in that an alleged debtor loses control of his property before the claim against him has been adjudicated. This being so, the provisions relating thereto should be strictly construed." (*Barceloux* v. *Dow*, 174 Cal.App.2d 170, 174 [344 P.2d 41]; see also 5 Cal.Jur.2d, Attachment and Garnishment, § 4, p. 598, and cases cited therein.)

Petitioners, of course, do not contend that there is any statutory provision, other than section 559½, as interpreted by them, which would authorize the levy of a second or subsequent writ of attachment upon the same property theretofore subjected to a valid attachment for the periods prescribed in sections 542a and 542b. Section 537 of the Code of Civil Procedure provides that: "The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, ..."

However, petitioners quite properly concede that this section may not reasonably be interpreted to mean that, by the use of successive affidavits and undertakings, a plaintiff, at any time after the issuance of the summons, may have the property of a defendant attached repeatedly and thereby create successive three-year liens. Manifestly, such an interpretation would render completely nugatory the limiting provisions of sections 542a and 542b.

██ The *right* or *remedy* of attachment, of course, is *unitary* in nature, although the mechanical processes by which it is effectuated, i.e., writs of attachment, may be several. (Code Civ. Proc. § 540.) ██ As stated in *Martinovich* v. *Marsicano*, 150 Cal. 597, 601 [89 P. 333, 119 Am.St.Rep. 254]: "All writs so demanded and issued constitute *parts of one proceeding to have the property of the defendant in the state levied on as security for any judgment that may be obtained,* and have for their basis the affidavit and undertaking given to secure the remedy of attachment."[3] (Italics added.)

---

[3]In 1907, when the *Martinovich* decision was written, section 540 provided only that "Several writs may be issued at the same time to the sheriffs of different counties." The court, however, ruled that these several "original" writs might be issued upon the same affidavit so long as the request therefor was made within a reasonable time. Since the *Martinovich* decision the Legislature has amended section 540 to

■ However, as noted in *Brun* v. *Evans, supra,* the lien created by exercise of the remedy of attachment continues to exist only to the extent authorized by statutory enactment. Section 542a provides that, in the case of real property, the lien shall be for a period of three years *"after the date of levy"* unless otherwise extended as provided for therein. Section 542b provides that in the case of personal property the lien shall terminate "at the expiration of three years *after the issuance of the writ of attachment under which said levy was made; ..."* and no provision has been made for extension thereof. (Italics added.)

■ Therefore, if section 537 be construed together with sections 540 and 542b only, it seems clear that although a plaintiff may, through the mechanics of successive writs, attach so much of a defendant's property, as and when it is discovered, as may be required to secure his anticipated judgment, no provision is made for second or subsequent *rights* of attachment, or for the issuance of second or subsequent *"original"* writs that may be levied upon property which already is subject to attachment in the action, or which previously has been subjected to attachment in the action for the full statutory period.

In *O'Connell* v. *Rogers,* 72 Cal.App. 539, 541 [237 P. 775], an attachment had been discharged in accordance with the provisions of sections 554 and 555, Code of Civil Procedure. More than three years later, the defendant failed to provide a new undertaking with sufficient sureties as directed by the court. The trial court, purporting to act under section 1057, ordered the original attachment "restored with all force and effect given to it by law." With regard to this order, the appellate court stated: "As the order was made more than three years after the attachment was issued, and the lien thereof had ceased [citation], *there was no force or effect 'given to it by law' and the order was therefore ineffectual for any purpose."* (P. 541.) (Italics added.)

■ An attachment lien once terminated is totally ineffective (*Shaffer* v. *Noziglia,* 64 Cal.App. 93, 96 [220 P. 431]), and no court may revive it once it has ceased to exist. (*Brun* v. *Evans, supra,* 197 Cal. 439, 443.) ■ It is only a *potential* right or *contingent* lien that must be perfected by means

provide for issuance of several such "original" writs to various officers in "any county or counties" upon the same affidavit and undertaking "within 60 days after the filing of the affidavit and undertaking."

of a judgment within the statutory period. As stated in *United States* v. *Security Trust & Sav.*, 340 U.S. 47, 50 [71 S.Ct. 111, 95 L.Ed. 53, 56]: "The Supreme Court of California has so decribed its attchment lien in the case of *Puissegur* v. *Yarbrough*, 29 Cal.2d 409, 412 [175 P.2d 830], by stating that, 'The attaching creditor obtains only a potential right or a contingent lien. . . .' Examination of the California statute shows that the above is an apt description. The attachment lien gives the attachment creditor no right to proceed against the property *unless he gets a judgment within three years or within such extension as the statute provides.*" (Italics added.)

 Petitioner herein acknowledges the correctness and applicability of these basic rules, but seeks to avoid their effect by the assertion that section 559½, which authorizes the issuance of alias writs of attachment, permits a plaintiff to do ex parte what the court itself lacks the power to do, i.e., either to extend the three-year period during which the original lien is effective, or to create a new lien effective for an additional three years. Petitioner's arguments in this regard are not persuasive. A similar contention was made by the appellant in *Kelly* v. *Ferbrache*, 119 Cal.App. 529 [6 P.2d 987] (hearing denied) in regard to an alias summons. In disposing thereof the court stated at pages 532-533:

"Appellant makes the further point that the provisions of section 581a of the Code of Civil Procedure relate and apply only to the service of original summons and not to an *alias* summons. Her claim in this respect is that the issuance of an *alias* summons at a date some seven months later in point of time than the issuance of original summons had the effect of extending the three-year period prescribed by section 581a of the Code of Civil Procedure for a like period of time. We are constrained to hold this claim to be without merit. The duplication of previously issued process, whose issuance is provided for by section 408 of our Code of Civil Procedure, is to be had only in the event the original summons has been 'returned without being served on any or all of the defendants, or if it has been lost.' This form of mesne process is not to be held identical with the *alias* process or writ known to the common law. At common law, writs were returnable at the next or a specified term of court, and an *alias* writ was one sued out within the specified return period where the original

had not produced the required effect or was itself defective. It was so called from the words 'as we have formerly commanded you', being inserted after the usual commencement 'we command you'. [Citation.] The so-called *alias* summons for which provision is made in said section 408 of the Code of Civil Procedure, contains no such recital; *it merely duplicates its original and is a mere substitute therefor.*" (Italics added.)

Manifestly, the same statement may be made regarding the alias process authorized in attachment proceedings. Section 559½, like section 408, authorizes the issuance of alias process in only two instances, i.e., (1) when the original process has been returned without having been fully effective, or (2) when the original process has been lost. In each instance, the issuance of the new process is merely the mechanical means by which a new paper is issued to permit the performance of the unfulfilled function of the original.

Petitioner seeks to strengthen its contention by noting that section 559½ was amended in 1941 to provide specifically that an alias writ might issue upon the original affidavit and undertaking "at any time before judgment." However, as pointed out in 15 Southern California Law Review, page 13, this amendment was designed merely to eliminate the hardship and unnecessary expense which had resulted in those counties where the county counsel had taken the position that the sixty-day time limit, provided in section 540 in regard to the issuance of several *"original"* writs upon the same affidavit and undertaking, also applied to the issuance of alias writs under section 559½.

Finally, it seems manifest that, when the Legislature provided in detail in section 542a the method by which the life of an attachment on *real* property might be extended by the court, but failed to make any similar provision in section 542b relating to *personal* property (where the hardship suffered by the alleged debtor by reason of the attachment is vastly greater), it did not intend to authorize a plaintiff to extend or to recreate, a lien beyond the three-year period following the issuance of the original writ, or writs, under which the initial levy of attachment had been made.

The correctness of this construction is made even more apparent when it is considered that a contrary holding also would render largely ineffective the provisions of section

542a that extensions of attachment liens on real property may be had only under the aegis of the court in which the actions pending and upon motion made therefore "not less than five nor more than 60 days before the expiration of said period of three years, . . ." Except in those instances where a plaintiff desires to benefit from the doctrine of "relation back", he could, with equal effectiveness, "extend" his lien an additional three years by obtaining, ex parte, from the clerk either an alias writ or a new writ of attachment based upon a new affidavit and undertaking, causing a levy thereon to be made upon the same real property shortly before or after the expiration of the original attachment.

We do not conceive it to have been the intent of the Legislature, in enacting sections 542a and 542b, merely to regulate the priority rights of third-party claimants to a defendant's property. Rather, it would seem more reasonable to conclude that the legislative purpose was to establish the maximum period for which it was deemed just and reasonable to subject a defendant to loss of the use of his property prior to a judicial determination of the merits of the plaintiff's claims.

The Legislature has set this period at three years, and a plaintiff must take such steps as are necessary to insure that a judicial determination of his claim is achieved within this period or suffer the loss of this right. It matters little whether plaintiff's attempted use of the alias writ be considered as effecting a three-year extension of his lien, or as creating a new and different three-year lien, because three years added to three years produces a total of six years as surely as three years extended by three years. In either instance, a defendant would be deprived of the use of his property for twice the period authorized by the Legislature.

It is not clear from the record why the court felt it necessary to enjoin petitioner from pursuing the remedy of attachment against the garnisheed property in the future, but, as previously stated, petitioner neither objects thereto nor argues that by some method other than the use of the alias writ as here attempted he can continue to deprive the Rorks of their property beyond the three-year maximum period provided by statute. Perhaps the court was concerned that petitioner, although apparently not threatening so to do, might obtain the automatic issuance by the clerk of a "new and different" writ of attachment simply by making an ex parte application therefor based upon a new affidavit and

undertaking. As we have heretofore pointed out, the practical ability to obtain repeated issuances of the mechanical *processes* of attachment cannot revive the *right* or *remedy* of attachment when it has expired by reason of its already having been exercised for the maximum statutory period.

Petitioner argues that, if it cannot in some fashion continue the effectiveness of its garnishment until the case is brought to trial, it will suffer irreparable hardship. However, as heretofore indicated, attachment is a harsh remedy in that it subjects the alleged debtor to a deprivation of his property prior to an adjudication on the merits. (*Barceloux* v.' *Dow, supra,* 174 Cal.App.2d 170, 174. Cf. *Byard* v. *National Automobile & Cas. Ins. Co.,* 218 Cal.App.2d 622, 626 - 627 [32 Cal.Rptr. 613].) ▇▇▇ ''The three-year period for attachments and garnishments was considered by the legislature as a reasonable time within which a litigant could subject attached property to any judgment which might be obtained. . . .'' *(Jones* v. *Toland,* 117 Cal.App. 481, 483 [4 P.2d 178] and it may not be extended either by the litigant or the court.

The petition for the peremptory writ is denied and the alternative writ heretofore issued is discharged.

Fox, P. J., concurred.

A petition for a rehearing was denied January 9, 1964, and petitioner's. application for a hearing by the Supreme Court was denied February 5, 1964.