[Civ. No. 29373.   Second Dist., Div. Four.   Jan. 5, 1967.]

EUGENE V. KLEIN, Plaintiff and Appellant, v. JOSEPH BENARON, Defendant and Respondent.

Hindin, Sterling, McKittrick & Powsner, Maurice J. Hindin and Ronald M. Sohigian for Plaintiff and Appellant.

Wyman, Finell & Rothman, Erwin H. Diller and Allan B. Goldman for Defendant and Respondent.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

BISHOP, J. pro tem.*—On this appeal by the plaintiff from an order discharging an attachment, our crucial question is: does the complaint state a cause of action which brings into effect those provisions of section 537, Code of Civil Procedure, that declare that a plaintiff may have the property of the defendant attached "in an action upon a contract, express or implied, for the direct payment of money . . ."? Plainly, there was no express contract, either written or oral, and none implied in fact, as when a motorist requests a gas station attendant to "fill her up." We have concluded, however, that the defendant, contrary to his own desire, has by virtue of the law, impliedly contracted to pay the plaintiff a little more than $50,000, and the attachment was proper and should not have been discharged.

The first case cited in respondent's brief, one referred to six times thereafter, is *DeMirjian* v. *Ideal Heating Corp.* (1949) 91 Cal.App.2d 905 [206 P.2d 20]. This court once before had this case cited to it and observed in *Arcturus Mfg. Corp.* v. *Rork* (1961) 198 Cal.App.2d 208, 213-214 [17 Cal.Rptr. 758, 762] : "The cases relied upon by appellants are not helpful on the question of whether or not an attachment will lie on the basis of the complaint filed in this case. Thus, in *DeMirjian* v. *Ideal Heating Corp.,* 91 Cal.App.2d 905 [206 P.2d 20], the landlord sued to recover damages from his tenants for injuries to the leased premises allegedly caused by defendant's negligence. The complaint pleaded the cause as a breach of a provision in the lease obligating the lessee to employ due care in its use of the premises. The court held that the gist of the action was to recover damages caused by defendant's negligence and that the action was ex delicto, hence attachment was improper. In that case clearly there was no action ex contractu based upon a promise implied by law."

The statement which we have quoted, however, followed a number of cases in which it had been established that there was such a thing as an implied contract, not implied in fact but by the mandate of the law. We quote from *McCall* v. *Superior Court of Imperial County* (1934) 1 Cal.2d 527, 531-533 [36 P.2d 642, 644, 95 A.L.R. 1019] as quoted in the *Arcturus* case (198 Cal.App.2d 210-211 [17 Cal.Rptr. 760].) : ". . . there are at least three classes of promises to pay— an express promise to pay, a promise implied from the facts of the case, and a promise implied by law. . . . the implied

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

promise supplied by law is *ex contractu* in its nature. (*Philpott* v. *Superior Court, supra* [1 Cal.2d 512 (36 P.2d 635, 95 A.L.R. 990)].) With this in mind, we are unable to see any distinction between the three classes of promises so far as said chapter of the code is concerned, or why all are not included in the section allowing attachment. . . .

"The action in *assumpsit* in such cases is not upon the failure of consideration or upon the fraud practiced but upon the promise or obligation set up by the law to afford the injured party additional relief. . . . We therefore conclude that in such cases when suing for the consideration paid, the injured party may, where he has received nothing of value, have the writ of attachment."

Several other cases were reviewed in the *Arcturus* cases, in which attachments were found possible on the implied-in-law theory, although fraud, conversion, failure of an agent to turn over money, secret profit of agent had inspired the actions.

▌ With the principle thus established, let us examine the facts of this case to see if the principle applies. The complaint is drafted in five counts, the first in fraud, with exemplary damages requested, the fourth in the form of a common count (money had and received) for $50,000. The first count gives us allegations which illumine the fourth count. On January 30, 1961, the defendant owned 515 of the one thousand shares of the capital common stock of the Gamble Ranch Investments, a Nevada corporation, and was its president and a director. The defendant told the plaintiff a moving story. He, the defendant, had invested in more than $5,000 of the corporation's capital stock and had loaned the corporation $220,000 on unsecured promissory notes. The corporation needed to borrow $50,000, for which it would pay 10 percent interest per annum to plaintiff if he would loan it $50,000. Moreover, the defendant would cause the corporation to sell to plaintiff 5 percent of all its issued and outstanding capital stock for $500 if plaintiff would loan the corporation the $50,000 which would be used solely to buy additional lands, and not to retire or reduce any of its obligations and the defendant would not accept any payments from the corporation on its loans to him nor take any security for the same, nor would he do so as long as any part of the loan to plaintiff remained unpaid.

The plaintiff fell for the scheme proposed. He delivered to the corporation $50,500, receiving a promissory note and

52.6315 shares of the capital common stock. Instead of using the money to buy additional land, "upon the delivery of the [$50,500.00] by the plaintiff to Gamble Ranch Investments . . . the defendant caused [the corporation] to repay to him, the defendant, the sum of $50,000.00" as a payment of his loan to it. The loan, incidentally, was secured. Moreover, "immediately after the plaintiff delivered" his $50,500 to the corporation, the defendant, as its president, director and principal stockholder caused the corporation to borrow large sums of money and to repay the defendant in excess of $150,000 on his loans and gave him deeds to land as security.

On August 25, 1961, at the special interest and request of the defendant, the plaintiff delivered back to the corporation the 52.6315 of its shares that he had received. The corporation has paid plaintiff $1,190.50 on account of the principal of his loan, but no more, and it is now unable to pay anything.

We could extend this opinion by reviewing the other counts, but we are satisfied that we have here a situation where the plaintiff has his choice between two causes of action, upon one of which an attachment may issue, and has acted upon that one. Beyond question, the first cause of action is one in fraud, a tort, but its facts, revealing plaintiffs $50,500 going from his hands to the corporation and at once into defendant's account, due to defendant's misrepresentations and broken promises to plaintiff, presents a case where the law implies a promise on defendant's part to repay it.

Plaintiff has had an attachment issue, which may well be an election, ending his chances of recovering exemplary damages. (See discussion of cases in *Arcturus* v. *Rork, supra,* 198 Cal.App.2d 208 [17 Cal.Rptr. 758, 762].) The only thing of value received by the plaintiff he has returned. The interest owed him far exceeds the small sum paid upon the principal.

The order dissolving and discharging the attachment is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.