### In re WIND POWER SYSTEMS, INC., Debtor.

### WIND POWER SYSTEMS, INC., Plaintiff-counter-defendant-Appellee,

v.

### CANNON FINANCIAL GROUP, INC., a Nevada corporation, Defendant-counter-plaintiff-Appellant.

### No. 86–6746.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided March 3, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc June 15, 1988.

---

Jonathan S. Dabbieri, Hillyer & Irwin, San Diego, Cal., for defendant-counter-plaintiff-appellant.

William A. Bramley, III, Sullivan, Delafield, McDonald & Middendorf, San Diego, Cal., for the plaintiff-counter-defendant-appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and WILLIAMS,[*] District Judge.

* The Honorable Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation.

O'SCANNLAIN, Circuit Judge:

Cannon Financial Group, Inc. ("Cannon") appeals the district court's summary judgment affirming the Trustee in Bankruptcy's avoidance of Cannon's attachment lien. We reverse and hold that, under California law, the creation of an attachment lien by levy relates back to the date on which the creditor obtained a temporary protective order ("TPO") covering the debtor's assets. Even though the levy occurs during the ninety day preference period, such an attachment lien cannot be avoided by the Trustee as a preferential transfer or defeated by the Trustee's strong-arm power, nor does it expire automatically upon the filing of a petition in bankruptcy.

## FACTS

Appellee-debtor Wind Power Systems, Inc. ("Wind Power") was a manufacturer of wind turbine generators. Appellant-creditor Cannon was a customer of Wind Power.

On December 6, 1984 Cannon brought a contract action in California state court against Wind Power seeking damages of $2.7 million.

On December 7 Cannon obtained a TPO covering all property of Wind Power, pending a hearing on Cannon's application for a writ of attachment.

On January 16, 1985 the state court heard the writ of attachment application and extended the TPO to February 25, 1985.

On January 17 the state court issued the writ of attachment against all property of Wind Power.

On January 24 the ninety-day preference period preceding the filing of Wind Power's bankruptcy petition began to run.

Between February 4 and February 19 Cannon levied upon properties of Wind Power, giving rise to an attachment lien in its favor.

On April 24, 1985 Wind Power filed its petition for reorganization under Chapter 11 of the Bankruptcy Act, 11 U.S.C. §§ 1101 *et seq.* The management of its assets was then taken over by the subsequently appointed trustee in bankruptcy ("Trustee"), Ardelle Williams.

■ In an action to invalidate Cannon's attachment lien, the bankruptcy court granted summary judgment for the Trustee, holding that levies within ninety days of the filing of the petition created only potential rights. Because these were unperfected by judgment before the filing, the bankruptcy court held that Cannon had only an unsecured claim. The district court affirmed without opinion. Cannon now appeals.

## DISCUSSION [1]

### I

*May the Trustee avoid Cannon's lien as a preferential transfer?*

Among the powers of the trustee in bankruptcy is the power to avoid, and to reclaim for the benefit of the debtor's estate, most (1) transfers (2) of an interest in property of the debtor (3) to or for the benefit of a creditor (4) on account of an antecedent debt (5) made within ninety days of the filing of the petition in bankruptcy (6) made while the debtor was insolvent—presumptively, within ninety days of the filing of the petition in bankruptcy. 11 U.S.C. § 547(b). A transfer is preferential only if it satisfies all six elements. *Miller v. Wells Fargo Bank*, 406 F.Supp. 452, 463 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir. 1976). Section 547 aims to prevent fraudulent transfers by the debtor as bankruptcy

---

1. We may consider arguments other than those relied upon by the district court in affirming the summary judgment. As a general rule, the court of appeals does not consider issues raised for the first time on appeal. *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). However, it has the power and the discretion to do so. *Hormel v. Helvering*, 312 U.S. 552, 557–59, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941). This court will exercise that dis-

cretion when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. *See Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). The bankruptcy court's order in this case contains complete findings of fact that are undisputed by the parties. As the issues raised are purely questions of law, the exception is applicable.

looms imminent, and to provide an orderly collective action and distribution among creditors instead of a race to grab the debtor's assets. In a Chapter 11 proceeding, this also gives the trustee a chance to reorganize the debtor's business affairs and to retain what assets the debtor may need to run its business efficiently.

The Trustee has the burden of proving the avoidability of such a transfer. 11 U.S.C. § 547(g).

### A

California law allows a creditor to obtain a TPO against a debtor's property after it has shown in an ex-parte proceeding the probable validity of its claim and the probability of great harm if relief is not granted. The TPO creates a lien on all of the debtor's named property which survives most transfers. Cal.Civ.Proc.Code § 486.020.

The creditor can then obtain an order to attach and a writ of attachment after notice and a full hearing. At the hearing, the creditor must show that, on the facts presented, it would be entitled to judgment on the claim on which the attachment is based. Cal.Civ.Proc.Code § 485.220.

When the creditor levies upon the writ, an attachment lien is created in its favor. Cal.Civ.Proc.Code § 488.500(a). If the property thereby attached was also subject to a TPO at the time of levy, "the *priority* of the attachment lien relates back to the date the earlier lien was created." Cal.Civ. Proc.Code § 488.500(e) (emphasis added).

The issue facing us, then, is whether the *creation* of Cannon's lien relates back to the date on which it obtained its TPO. If it thus predates the ninety-day preference period, it cannot be avoided under section 547. *Metcalf v. Barker*, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902). The Trustee argues that only the lien's *priority*, not its *creation* relates back; because it was created within the preference period, she says, it may be avoided.

We find Cannon's argument persuasive. For purposes of section 547, the time of a transfer relates back as allowed by state law. *Bass v. Stodd*, 357 F.2d 458, 463 (9th Cir.1966). Although the precise language of section 547 refers only to the lien's "priority," *i.e.*, the lienholder's position vis-à-vis other creditors, the section is eviscerated unless it also encompasses "creation" —the lienholder's right against the debtor. Bolstering this view is the text of the predecessor statute to section 488.500, which draws no such distinction: "Where a [TPO] has been issued ... the lien of attachment on property described in such order and subsequently attached is effective from the date of such order." Cal.Civ. Proc.Code § 488.500(i) (1976). The Law Review Commission's Comment to the current revision (1982) says that it continues this prior statute in substance. The Comment to Cal.Civ.Proc.Code § 486.110 adds additional support: "The levy of a writ of attachment perfects only the lien that could be initially *created* by the temporary protective order." *Id.* at 1671 (emphasis added).

Another section of the report says that the series of 1982 amendments "codifies the ... rule that a creditor's priority relates back to the time as of which the first of a series of overlapping liens is created." 16 *Cal.L.Rev.Comm.Rep.* 1039 (1982). However, the courts have not yet considered the operation of section 488.500.

A recent Third Circuit case with closely similar facts reasoned that a levy within the preference period was not avoidable because "transfer" for purposes of section 547 is predicated upon the fixing of priorities among creditors, and priority in that case was determined by an event outside the preference period (the date the writ was issued). *In re Ramco Am. Int'l*, 754 F.2d 130 (3d Cir.1985). Because Cannon's priority vis-à-vis other creditors was determined by the date of the TPO, we find that no new transfer occurred within ninety days of the filing of the petition.

Nor does this reading contravene the policy behind the trustee's section 547 power of avoidance. Because Cannon brought and actively pursued its claim well before the start of the preference period, it could not be said to be trying for a last-minute

grab for Wind Power's assets or evading the creditors' collective action process. The bankruptcy court rewards the timely and diligent creditor, and Cannon has shown such diligence.

While the Trustee's interpretation appears to comport with the literal language of the statute, we find it to be inconsistent with the overall statutory scheme; in such circumstances as these, if creation does not relate back, then the lien creditor loses its priority as well.

We therefore hold that, as a matter of California law, the creation of Cannon's attachment lien dates from the time its TPO was granted. Because the lien was created outside the ninety-day preference period, the Trustee may not avoid it under section 547.

### B

■ The renewal of a lien or security interest is not a new transfer within the meaning of section 547 if it merely continues an existing interest; it does not diminish the collection of assets to be distributed among the general creditors. *In Re Cloyd,* 23 B.R. 51 (Bankr.E.D.Tenn.1982).

■ A "transfer" within the meaning of section 547 "occurs when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interests of the transferee." 11 U.S.C. § 547(e)(1)(B), (2)(B). An exchange that does not take value away from the debtor's estate cannot be a transfer within the reach of section 547. *Nicholson v. First Investment Co.,* 705 F.2d 410, 413 (11th Cir.1983).

Because we hold that the creation of the attachment lien related back to the grant of the TPO, we also hold that the transfer at issue—the fixing of the attachment lien —occurred at that time, and hence was not an avoidable preference. Because the lien created by the TPO was perfected outside the ninety-day preference period, and encumbered the property to no lesser extent than did the attachment lien, the perfection of the attachment lien gave Cannon no greater rights in the debtor's estate.

Cannon's security interest in Wind Power's assets is no greater under the attachment lien than it was under the TPO lien, so Wind Power's assets are not diminished thereby. *In re Hensley,* 70 B.R. 237 (Bankr.D.Kans.1987), is instructive. In that case, a lien was sufficient to prevent a third party from obtaining a later senior interest although it was contingent upon a later entry of judgment. The transfer was therefore deemed to have occurred under the section 547 definition at the service of the writ, outside the ninety-day preference period, and hence was not avoidable.

The change from the TPO lien to the attachment lien was not a new transfer within the meaning of section 547, so could not have been a preference; therefore, the lien may not be avoided.

### II

*May the Trustee avoid Cannon's lien under 11 U.S.C. § 544?*

■ Under section 544, the Trustee stands in the shoes of a hypothetical lien creditor whose lien arose on the day the bankruptcy petition was filed. With this "strong-arm" power, she may avoid and recapture for the debtor's estate any junior claim. Thus, the security interest of a creditor who has not perfected is defeated by the Trustee's section 544 power and relegated to the status of an unsecured debt. A secured creditor who has timely perfected retains its interest in the bankrupt's estate, and may look first to any collateral in which its security interest has priority.[2]

Section 544 preserves within the bankruptcy proceeding the equities among creditors that existed outside bankruptcy. It freezes the relative positions of secured and unsecured creditors at the time of the filing, reducing the incentive to file a strategic bankruptcy petition, and awarding the diligent creditor. *See generally* T.

---

**2.** The Trustee also argues that she is a bona fide purchaser for value within the meaning of Cal. Code Civ.P. § 697.740 by virtue of her strong-arm powers, and that a TPO lien does not survive a transfer to such a person. However, only the Trustee's section 547 powers relate back to nine-

ty days preceding filing. Because her section 544 powers arose only "at the commencement of the case," she only received the protection of section 697.740 at filing. Because Cannon had already levied on the property, this argument must fail.

Jackson, *Logic and Limits of Bankruptcy*, 68–88. The Bankruptcy Code looks to state law to determine the effect and validity of such liens. *McKenzie v. Irving Trust*, 323 U.S. 365, 370, 65 S.Ct. 405, 408, 89 L.Ed. 305 (1945).

No judicial lien creditor whose lien arose after December 7 can defeat Cannon's lien, assuming that Cannon will succeed in reducing its underlying claim to judgment. That Cannon will succeed seems a likely assumption because Cannon had to present a strong showing of success on the merits to obtain a writ of attachment. However, Cannon's attachment lien has not yet been, and might not be, reduced to judgment in its state court action.

It is this uncertainty upon which the bankruptcy court relied in holding that the Trustee could defeat Cannon's lien. It cited *Arcturus Mfg. Co. v. Superior Court*, 223 Cal.App.2d 187, 35 Cal.Rptr. 502 (1964), and *Puissegur v. Yarbrough*, 29 Cal.2d 409, 175 P.2d 830 (1946), in support. However, neither was a bankruptcy case; both held only that a creditor had no right to proceed against property after his writ had been allowed to lapse without perfection. *In re Savidge*, 49 B.R. 429 (Bankr.D.Dela. 1985), *aff'd*, 57 B.R. 389 (D.Dela.1986), also cited by the lower court, held that a writ of domestic attachment to secure jurisdiction, unperfected by judgment before the filing of a petition, is insufficient to give the attaching creditor secured status. *Id.* at 391. However, the *Savidge* opinion cites no case law in support of its conclusion, and the logic of its application by the bankruptcy court would also overturn a strong line of cases in this court allowing prepreference lien creditors to proceed to judgment. *See, e.g., In re LaFortune*, 652 F.2d 842 (9th Cir.1981); *Bass*, 357 F.2d 458; *Metcalf*, 187 U.S. 165, 23 S.Ct. 67.

The bankruptcy court incorrectly relied upon *Savidge*. Although its holding does not directly conflict with superior authority, its application to these facts runs counter to a long line of cases upholding liens in the face of the trustee's section 544 powers and allowing lienholders to proceed to judgment after bankruptcy.

As a matter of policy, the *Savidge* result is undesirable. Had the *Savidge* creditor been allowed to proceed to judgment, it would have taken priority over the trustee's judicial lien. The bankruptcy court's result provides an incentive for strategic bankruptcy filings which distort rights among creditors from what they would be outside bankruptcy proceedings.

The *Savidge* opinion also stressed that the Delaware writ had been secured only to compel the defendant's appearance, and had been issued in an *ex parte* proceeding. Because California law required a significantly stronger showing on the merits by Cannon, and allowed Wind Power the opportunity to contest it before the writ was issued, we do not find the reasoning of the *Savidge* court applicable here.

### III

*Is Cannon's attachment lien extinguished by operation of state law?*

■ Cal.Civ.Proc.Code § 493.030 terminates a lien of a TPO or attachment if it was created within ninety days prior to the filing of the petition in bankruptcy. Cannon argues that the extinction provision of section 493.030(b) is merely meant to ease the implementation of bankruptcy process without affecting creditors' substantial rights, and should hence not be applied against it. Legislative history confirms this view. *See* 15 *Cal.L.Rev.Comm.Rep.* 1043 (1980). The purpose of the section is to have a lien of attachment declared void without court action. It is even more significant that this statute was added to the California Civil Procedure Code in 1972, and until the section 488.500 "relation back" provision was revised ten years later, the literal language and operation of section 493.030 bore out the interpretation put forth by Cannon. It seems unlikely that the legislature would have intended to make such a change in substance without at least some comment.

Because we find that the termination statute does not apply to Cannon's lien, we need not reach Cannon's argument that the termination statute is unconstitutional.

### CONCLUSION

Cannon's policy and precedential arguments prevail in an uphill battle created by

a legislative oversight. Because we hold that the statute intended the creation of the attachment lien to relate back to the date the TPO was granted, no new transfer occurred within ninety days of the petition; the attachment lien is not avoidable under section 547, and is not terminated by operation of California law. The judgment of the district court affirming the bankruptcy court must, therefore, be

REVERSED.